Thanks very much, Council. Good to see you. We've got, I see, one council here. Who else? I have somebody on by YouTube. Who's on by, excuse me, by Zoom. Who's with me visually here? Your Honor, this is Anand Agnishwar from Arnold and Porter for the Appalachian Police. Okay. Good morning. Mr. Agnishwar. Good morning, Your Honor. This is Matthew Jaczynski with Motley Rice on behalf of the appellant. All right. Well, we're, uh, we're ready to call this case. We've, uh, you know, we've had the matter, uh, up and, uh, over to the Delaware Supreme Court and now back to us. So, um, Mr. Jaczynski, you can go ahead and proceed. Do you want to save any time for rebuttal? Uh, yes, please, Your Honor. Four minutes. Okay. Done. Thanks. You may proceed. Thank you and may it please the Court. Matthew Jaczynski on behalf of, uh, the Relator Appellant JKJ Partnership 2011 LLP. This case is, is not about whether a stranger with no relationship to the original relator may inject itself into an existing CCAM action. I know. That is intervention. Right. And, and, uh, this is not like an in-bank where we're going to give you five minutes uninterrupted. We've got plenty of questions and we've read the briefs and we've read the supplemental brief. So I'm just going to dive in with, with questions. And I know my colleagues will have some too, Mr. Jaczynski. The first question I've got is something that wasn't briefed by anybody and really didn't occur to me while I was looking at this. So maybe it needs, I don't know, some supplemental help, but Judge Wolfson, Chief Judge Wolfson dismissed this as a jurisdictional matter under 12B1. Um, had she done this on the public disclosure bar, there, the statute specific, it's jurisdiction stripping. The first to file bar, which is the basis on which she dismissed it is not explicitly jurisdiction stripping. Uh, it's a standing issue. The question is, is a dismissal based on standing jurisdictionally based or is it a 12B6, a failure to state a claim dismissal? You know, that might seem a distinction without a difference in this case. Nobody's looking to go outside the four corners of the complaint as far as I can tell. So, you know, whether this is a facial or a factual challenge to jurisdiction, you know, isn't an issue, but it's nice to know whether we're talking about our own jurisdiction or not. So do you have a, uh, and I don't know if Mark may be catching you and, uh, Mr Agnes Schwartz, uh, without any warning on this. But do you have a view on that, Mr Jashinsky? Your Honor, I don't think that the Third Circuit has directly answered. The question is whether it's jurisdictional. There's, I believe, a split of authority on that question. I know certain circuits have concluded it is jurisdictional. I think you're right. There's a split. Some say it is. Some say it isn't. I think even the First Circuit has questioned its own jurisprudence on that issue. And I'm misremembering, I believe it's a Kellogg, there's Kellogg in the name, Supreme Court decision that the First Circuit said might mean that it's not a jurisdictional issue. The reason being that if a first filed case is no longer pending, then there's no bar to, uh, and a case that had been filed, um, during the pendency, uh, proceeding at that point because it's no longer barred by the first to file rule. And the logic being that if it were a jurisdictional issue, um, then, then that, um, that, that reasoning wouldn't make sense. But, but Your Honor, I confess this is not something I've studied closely and, um, would be happy to if the court asked. Yeah. Well, uh, I'll ask my colleagues and don't indulge me. And I will ask for both parties to give us a, a short, real short letter, a memorandum, a 28 J letter after this to address whether, um, we're dealing with a 12 B one or a 12 B six issue because it's, yeah, it's nice to know whether we're talking about jurisdiction or not. Um, if I may, Your Honor, as I think you've, you've pointed out, I'm not sure that it would make a difference ultimately. I mean, at the end of the day, um, the court can, you know, if, if, if it is, I get it, whether, yeah, I get it. It's just nice to know whether we're doing it right or not. Yeah. Yeah. I don't want to be, I don't want to be using a wrench when we're supposed to be using a screwdriver. So tell us what tool we're supposed to be operating with. I'll be happy to hear that from both of you. Uh, all right. With, with that out of the way, uh, on your side of the ledger, uh, one of the things that's of most interest to me is what's the limit on your argument, your argument at base seems to be, and, and, um, Mr. Agnes Schwartz and his colleagues have said, uh, you know, you're wrong at every step, but they've laid out the steps of your argument. The first and primary one of which, uh, does in fact seem to be that, um, uh, you've, you've got a, um, uh, a volunteer, you, you have an, in effect, a substitution under 25 C that's not a new party, uh, coming in in the same way as a joinder. And therefore the first to file bar doesn't, uh, affect that. And their response is look, if that were the case, then you could just endlessly have relators coming in and substituting themselves and saying, Hey, I'm not joining. I'm just taking over. And that can't be right. What's your response to that? Well, I think what's interesting, your honor, is that, um, if, if we were an entity partnership, um, then I don't believe the defendants would dispute that the members of that partnership would be free to change. All of them would be free to change. And that would not, uh, you're not, well, I understand your honor, but, but if we, to address the court's question about, about the issue of, of additional, um, individuals coming in and taking interest or control of the litigation, there's, there's really no, there's really no difference analytically. We know that we know that corporations and LLCs and partnerships of any kind are persons within the meaning of the false claims act, and they are allowed to bring these cases. And, and all of those types of entities have membership changes. It's, it's going to change the composition of, of who's in control of the litigation. So there's really no difference. Well, no, there is a difference. The difference is you're not a partnership, not a corporation. You're not an entity partnership. I mean, I think I understand your argument is if corporations can do it, why can't we? Cause that doesn't implicate the policies of the first to file rule, but you've just, it almost sounds like you're trying to re-argue the Delaware Supreme court point and say, Hey, we're just a partnership, uh, that changes some membership. So what, well, the, so what is the old partnerships gone? You made a choice. The district court pegged you as having done it for a strategic reason. So you could avoid the public disclosure issues, uh, and be an original, you know, source of original information, but you made your bed, you got to lie in it. Now you've got a different partnership. So the answer, uh, I don't feel you advancing the argument by saying we're just like an LLC or a corporation. It doesn't implicate the issues. They're their assertion is it does implicate the issue because under your logic, people could, could substitute themselves, uh, under 25 C or seek to do that. And that would defeat the first to file rule. That's what I'm trying to get you to answer. I understood your honor. And, and, um, so let me move off that point, although I think it's a valid one, but the, the reality in this case is that we're not talking about somebody substituting itself. We're talking about two partners who joined a third partner. And we understand that under Delaware law that, that caused the effectuated to change in the partnership. Um, but the new partnership stands in the shoes of its predecessor. And, um, I don't think that there's any, there's any bar to, um, to, to a relater, um, you know, partnership bringing an action and, um, and changing shape during the pendency of the action and then allowing its successor to stand in his shoes. That is not, um, that, that doesn't implicate the policy concern of having sort of a successor does not bring itself to the table. I, we cited the, um, the Brooke case, um, out of the seventh circuit, which was a good example of this, where, um, after a successor substituted into the case, the successor said, well, I didn't consent to trial by magistrate judge. And the seventh circuit said, that doesn't matter here because you're not really a party that original your, your predecessor did. And you are bound by that because you're standing in that predecessor shoes. And I think that's exactly the case here. There really isn't a policy concern of having, you know, successive new relators because ultimately we're one relater. It's just that now we have a new, um, partnership under Delaware law that is standing in the shoes of the original relater in this case. Then why do you have to, why do you have to have an assignment? Because if it just were happening automatically, why is there the necessity of delivering over some document that says, and we are giving you our litigation? We're really not sure that there was a necessity for that. I mean, I think we're, we're, we're in this strange pair parallel universe. I'll call it where, you know, the parties did not understand that they were, um, that they were dissolving a partnership. And we understand that Delaware Supreme court has said, that's what happened, but the parties had created a, an LLP. Uh, they had a, uh, a partnership agreement that allowed for a membership change and said, the partnership doesn't dissolve. Um, so, so that they're, they were not thinking about, um, transferring assets from one party to another, that the Delaware Supreme court observed in its decision that perhaps the crucial question is whether litigation as it transferred. And with that in mind, you know, the, the partners here who wanted to make sure that their claim could continue said, well, let's make sure that that's what's happened. And so I, you know, whether it Because I'm a little confused here. If you're, if your assertion is this happened by operation of law just happened when, when the new partners came in and the dissolution occurred and the new partnership stood in the shoes of the old, everything that the old partnership had became the new partnerships, debts, uh, assets, the whole shebang lock, stock and barrel. And there was no need to transfer anything because it just happened. Well, then that's one Assertion. But if you're saying, you know, in order to affect these kinds of things, there has to be a transfer of assets, then that's a factual question, right? Are we dealing with the question of fact, whether you transferred it, or are we dealing with the question of law that the operation of law made it happen? Well, I think, I don't know the answer to the question, to be honest, your honor, it could be either of those things. And here, and here's why I say this. Hold on. It's true. If that's true, does that mean this has to go back? Answer that. No, no. And that's what I want to get to. It doesn't. And I think the defendants contend that it doesn't also. Here's why. This was, this was decided on a motion to dismiss where the, where the district judge, um, reading the second amendment complaint came to the conclusion that the first partnership had handed off the litigation to the second. So that was really the basis for the court's decision. And so we're, we're operating in a universe where that's the, that is the fact that the court essentially assumed to be true for purposes of the decision as to what would happen here. Now, now ultimately the answer as to whether that's, that is correct factually or not is really beside the point because it can happen. The point is that, that the, the original, the original partnership can transfer the, if it didn't happen, the original partnership can transfer it to the new partnership as it's intended to do by the partnership continuation agreement. And so, and so whether, whether we're inferring it from the second amendment complaint, whether it happened by operation of law or whether it executed partnership transfer agreement really is beside the point because it was the, the basis for, uh, the court's conclusion that there now was a, a second partnership that was in the case. If, if Jake, if the second compliment of partners, um, did not have that asset, then they, they couldn't file the second amendment complaint. I mean, we have to look at through it. It's really a nullity. All right. I, I burned all of your time and haven't asked a single question about I know I got colleagues that are interested in that. So, uh, you're, you're on, uh, on our time now. It's not counting against you judge Beavis. Yes. I've got a couple of questions. The first one is if this is your position is that this is limited to rule 24 intervention, then does the first to file bar have any teeth? I mean, is there anything to prevent an endless series of substitutions and assignments and other things? I think that's the concern. We want to understand what, what does the first to file bar mean? You've talked in raw policy terms, but how does that square with the statute that has to be doing something here? What's it doing on your view? Well, the statute uses the term intervene. I think, I think when we interpret statutes, this court has said, we look first to the plain meaning of the statute and intervention has a it's, it is the means by which a third party exercises some right to insert itself into a litigation. When somebody is joined by way of an amendment complaint, if the court adds or drops a party, if there's a substitution, we would never call those interveners. I mean, it's just, it's not the term that would be used because we think of intervention as what it is, which is that the right of a third party to come in and to intervene in the case. And the procedural device that's used for that is rule 24 in the ordinary case. Now that is not to say that it's not possible. Answer the district court's interpretation of Eisenstein then. So I believe that the district court's interpretation of Eisenstein is completely wrong. The Eisenstein case was addressing the question of whether the United States was a party to the case, and that would impact the time for filing a notice of appeal. That was the question before it. And the court said, we know the United States was not a party because the way that the United States becomes a party under the False Claims Act is it intervenes. It hasn't intervened. It's not a party. We're done. It wasn't interpreting the term intervention in any way. It certainly wasn't interpreting the term intervention to mean that any time a party is in any way joined to a case by way of example, by amendment or substitution, that that constitutes intervention in any sense of the term. I mean, the Supreme Court just was absolutely not addressing that issue. And I think the other thing to note is the court actually observed, citing to the Devlin case, that the procedural device in play may differ depending upon the circumstances. So, you know, it's not, we're not, our argument is not that if it doesn't say rule 24 on it, then it's not intervention. That's a very, that's not what we're saying. Because I think when you have a true stranger to litigation show up who has absolutely no right to be there, they have no, they aren't a successor. The original relator has not added them. And they purport to file a pleading. I mean, they're trying to intervene. Now, I think the answer is they may not do that. I mean, you have to file a motion for leave to intervene under rule 24, and it has to be granted. So I think analytically, somebody who does that really is not in the case at all. They're not a party. They're not a new party. They're just a complete stranger still. But the answer to me, I know your question really focused on the policy that flows from that. And I think the answer to the question- I'm not focused on the policy. I want to talk about the meaning of the statute, not policy concerns. Understood. But I think your question, Your Honor, was directed to a concern about relators showing up willy-nilly and what teeth does the term have, right? And I mean, I think the answer is that original relators are free to join other relators because they have made a choice to essentially strengthen the case by bringing somebody else on board. Or they, by necessity, need somebody else to continue the case for them, for example, in the case of the death of an adult. And the false claims act says you can't have pile-on me-too cases by strangers. Somebody can't say, oh, I saw that false claims act file. I'm going to insert myself into that. We get it. We know the policy. And if Judge Bevis doesn't mind, I'm pressing you a little bit on this too. What does first to file mean? If it doesn't actually mean, if you're not the relator, forget it. Well, Your Honor, it doesn't say first to file. It says when a person brings an action under the subsection, no person other than the government may intervene or bring a related action based on the facts underlying the pending action. That's what it says. And it says two things here, right? It says intervene or bring a related action. What does the statutory language mean when it says bring related actions? Does that mean only bring a new complaint or does that mean in some form or fashion other than bringing in, filing a new action, show up and start litigating like as a successor in interest? I don't think it says that. It says bring a related action. I think action has a common understanding within the statutes and the rules. I think it's understood to be an action. And if it's an action that's based upon the facts underlying the pending action, then it may not proceed. Sorry, finish that sentence. By the same token, somebody can't come along and say, oh, well, rather than file a new and different action, I'm going to try to worm my way into your action. And they can't do that either. That's not what neither of those things happen here. Okay. Now, so a question about the procedural clear. This is basically an aggregate partnership. It's complicated. It's not neatly one or the other, but it's more aggregate than anything else. So why are we even talking about the partnership here? Why aren't we just focusing on there were three partners and now we have a different three partners here. Why aren't we just addressing this in terms of the rights of the individual partners as the people behind this who were bringing it? And if we analyze it that way, isn't it relevant that we now have a third person injecting himself at the stage of the second amendment complaint? So two ways to respond to that. So first, I'm going to assume for sake of argument that the third person is attempting to inject himself. If we're looking through to the complement of partners, then the court can say, no, no, no, Dr. Gravel, third person, you may not do that. Your claim is stricken from the complaint. And we've cited in our briefs examples of where courts have essentially denied, either denied because they agree with the defendants here, denied a motion to amend to add a party so that the original parties continue. Or, you know, they would kick out an intervener. But I mean, if we're looking through to the complement of partners and we assume that what Dr. Gravel, that his presence in the case is not allowed, then the answer is not to dismiss the action. The answer is to dismiss Dr. Gravel. Now, having said that, our position is that the two original relators, two original partners who remain partners and remain present in this case may, without violating the the intervention bar, may join an additional partner as a relator, that that does not that is not intervention within the meaning of the False Claims Act. And it's not intervention within what the court was thinking either. Okay, I have nothing. Judge Nygaard, you have any? Yeah, now that answer confuses me a little bit. The second amended complaint explicitly referenced the second partnership as the relator. And you didn't offer any alternative explanation for this. Therefore, is not the undisputed record clear that the second amended partnership filed the second amended complaint and it is the second partnership as the relator, not not this new person in there? Can you? Can you clear up my question, please? Well, Your Honor, I think that there are two ways to look at it. I think Judge Bevis asked about one way, which is if we look through to the individual partners, because Delaware has, you know, this is an aggregate partnership. It's not distinct from its partners. And so I think what's instructive in that sense are is the HB case that we've cited in our brief HB General Corp, which was a Third Circuit decision. It was dealing with the Delaware partnership. And, you know, what it said ultimately was that it didn't have to reach the question as to whether the claim was the partnership's claim, because the partners were real parties in interest. So, you know, I think viewed that way, you can look through to who the partners are, because you do have an indistinct partnership. Now, having said that, on the other hand, again, going back to what the second amended complaint says, that first, I would say, the partners obviously didn't understand that they were creating new partnerships. So the is that the relator is the same. It's JKJ, but there's been a change in membership. At least that's the inference. And now we know, Delaware has told us that those are technically two different partnerships. So I understand that. The question is then, as the Delaware court said, well, does the second partnership have the right to proceed with the litigation? And the district judge, I think, concluded based on the pleadings and based on the second urging that the litigation was handed off, the defendants have consistently taken that position before this court. And we're agreeing with it at this point, based on what Delaware said. You know, if the court's not going to draw the inference, then we've offered to supplement the record with an agreement that effectuates that transfer. But either way, dismissal was not warranted in this case, and we should go back and proceed. I have no further questions, Judge Jordan. Thanks. I do have one more. If you respond to the anti-assignment argument, the assertion that you're violating the Anti-Assignment Act by purporting to transfer this litigation asset. There's no case that has held that the Anti-Assignment Act applies to a ketan claim, and it really wouldn't make sense that it would. A ketan claim is not a claim against the government. And in fact, in the text of 3730B, it says a person may bring a civil action for a violation of Section 3729 for the person and for the United States government. So it's always been understood that the anytime there's a, I mean, the relator is an enforcement mechanism. And when and if it has anything in the way of a recovery interest, it's against the government, right? Well, its interest is in the share of the proceeds from the defendant. And so obviously, a disputed claim is from the government, right? It litigates against the government if the government won't give it, right? So I'm not aware of a circumstance where the government won't give it. The statute requires and it has a minimum amount of a percentage that would be shared by the relator. Now, to the extent there's a dispute between the relator and the government over the amount of that share, it is resolved in the context of the underlying False Claims Act proceeding. It's not in a separate claim against the government. And in fact, I'm not aware that the government has waived sovereign immunity to bring a claim against the government under the False Claims Act. So I think this, I mean, if, you know, this is a matter we could read further as well, but I don't think that there, I don't think this is a close call, Your Honor. I don't think that the Anti-Assignment Act in any way implicates the relator's right to transfer an interest in the relator's share of a False Claims Act case. And the judgment in those sorts of cases is not a judgment against the government, might be formed under the caption of the original action, but it's a judgment that government has to satisfy, right? When there's a disputed share. You know, it's an interesting question. I mean, I think without putting a capital L legal in front of it, I think in common parlance, we would say that, yes, the government, if the government is holding the money in the treasury, the government would then pay the relator the share as ordered by the court. It's often the case that it's not. It's often the case that the money is held by the or by the court to the extent there's a dispute. I don't think anybody, I don't think that that type of situation is understood to be a claim against the government within the meaning of the Anti-Assignment Act. That the relator has an interest in the proceeds from the defendant on the share. And the point is that it's not that ultimately, you know, it is taking a cut of what's going to go to the government, but it is its own claim under 3730, the relator's own claim. Thanks, Mr. Jasinski. We've had you for an extra 15 minutes, but you still have your four minutes. I've enjoyed it. Thank you, Your Honor. Mr. Agnishwar. Good morning, Your Honor. Thank you. I suspect I'll be getting a bunch of questions too, but I want to start out by pointing out there's an elephant in the room here that I feel is sometimes lost in these complicated things about Rule 17 and Rule 25. And that is that Rule 17 and Rule 25 are really caption changing mechanisms. When everything stays the same, you can substitute in a new caption. That is not what's happened here at all. And if you look at the way Judge Wolfson described it, I think this is completely accurate. J.K.J. was a partnership of A, B, and C alleged to possess their knowledge and proceed with their legal rights. J.K.J. became a partnership of A, Dr. Goebel, and C alleged to possess their different combination of knowledge and legal rights. And that's a joint appendix in 31. Mr. Agnishwar, we now have a judgment from the Delaware Supreme Court, an opinion that tells us, on balance, we're supposed to be treating this as rights of A, B, and C. So why isn't the proper way to approach this to look if, and that's a big if, if Rule 24, if this goes beyond Rule 24 intervention, let's bracket that question for the moment. If you're right, and Goebel can't come in, isn't the proper thing to do to say that A and B drops out, no reason A and C should lose their rights? Respectfully, no, Your Honor. A couple problems with that. I think as Your Honor pointed out in the first part of the argument, this is a hybrid partnership. It's an aggregate partnership that also contains elements of an entity partnership. And there's just one example for it's a limited liability partnership. How can you have it, how can you ask, how can you ask to have it both ways? That's what you're doing. You're saying, we want it to be an entity for knocking it out. But we want it to be an aggregate for the purposes of saying there was a transfer. The Supreme Court's answered the question. This is an aggregate entity. Now, operate in that sphere. You're talking about an aggregate entity. And please answer what Judge Bibas is asking. I don't think it helps to go back and say, yeah, but for this purpose, it's an entity. Well, in fairness, Your Honor, I think the Delaware Supreme Court did point out that this partnership, that under the Delaware partnership scheme, there's freedom of contract, and you can construct a partnership that has elements of both. And they pointed out two instances in which this aggregate partnership had elements of an entity partnership. One was the limited liability, and two was the fact that they gave their claims to the partners. But I'll tell you why it matters in another respect. It matters to another respect because what the partners did was they created an uber-relator, really, that had the combined knowledge of these three individual partners. And so when one partner takes his ball and goes home, and remember, that original complaint was alleged on personal knowledge. It wasn't an information and belief complaint that you sometimes see in these key tabs. So when one partner takes his ball and goes home, you can see that the new combination of partners B and C can simply file that to proceed with that same complaint. And if you know- Are you raising a fact question, Mr. Agnish, or are you saying, well, we really don't know. We really don't know what those two knew. That sounds to me like what you're saying is there ought to be some fact finding to decide whether what partner B brought to the table is essential to the allegations of the complaint. And without partner B, they can't make those allegations. No, I don't think so. I think you can presume that they joined that partnership together to litigate the aggregate knowledge of those three partners. And I think it would be a stretch to then presume that if one falls out, that the same allegations could be pursued by the other two. But you don't have to. It's not a fact. You don't have to take my word for it. Because if you just look at the second amended complaint, there were four fraudulent schemes alleged in complaint number one. There was only one scheme alleged in claim number in the second amended complaint. The first amended complaint doesn't mention Gerbil at all. The second amended complaint, he's the hero, and he's mentioned 53 times. The reality is, and in some way, the way the saying that the new partner that came in, it's really all his stuff that dominates the second amended complaint. And without him, they wouldn't have made those claims. I think it was a do over. I think maybe the Dr. Venditto, we don't know exactly why, but it's clear a ton of allegations came out when Dr. Venditto quit, and they decided they would try do over with a new combination that included Dr. Gerbil. And yes, six years after the fact, they did try to make Dr. Gerbil the new hero of this. Okay, let's say you're right. Why isn't this a rule 15 issue for the district court to decide what's within the proper bounds of amendment? And at what point this goes beyond a proper That sounds like it's a very fact-specific issue for the district court. Why shouldn't we kick this back to the district court to sort that out? Well, I don't think there's anything to sort out, Your Honor. I think as Your Honor pointed out in what may have been Judge Nygaard in the prior questioning, they chose to form this new partnership with three people that included Dr. Gerbil. They didn't choose to file this as three individual people. They thought the whole was greater than the sum of its parts. Having made that decision, they need to be able to live by it. In fact, I would submit to Your Honor that in many respects, this case is actually more akin to LaCorte than it is to some of the cases that have been the focus of the briefing. Wait up, Mr. Agnishwara, because now we're back to your shape-shifting argument. It feels strange to hear you say on the one side, and indeed having won, that this is not, for purposes of Delaware law, this entity is really an entity that has to be viewed as three individuals looking to do something jointly, but it's not an entity that stands on its own. That provision of the partnership agreement that said, yeah, we'll continue on despite a change in partners is a nullity because they chose not. They chose to opt out of the entity form and to adopt an aggregate form. So having won the point and said it's really just three individuals operating under one name and it's not a how can you keep resorting to the fact that it's operating, that the three are operating together as a basis for saying, now ignore the rights of the two that were there all along, because that's what you're saying. You can pay attention to those three when it comes to whether or not the partnership exists or changed, but then you ignore their existence and focus only on the matter. How's that fair? Yeah, so our first point, Your Honor, is footnote 69 in the Delaware Supreme Court's decision that said this was a hybrid partnership that included elements of aggregate and entity. Point number two is if you look at the Ninth Circuit's decision in the Janssen case that we cited, there was a very similar issue where the relater was claiming, well, it was a limited liability company and I'm the sole shareholder, and the court relied exclusively on the fact that it was a limited liability, just like in this case to say, no, they're different people. I don't think it matters what the particular characteristics were of the partnership. The fact of the matter is they created a relater that had those combined characteristics and they're stuck with that and I don't think they get a do-over to tear that apart. Nor do I think it would be fair because I think what really happened here is they were trying a do-over six years after a fact which is more akin to filing a related action with a new group of people and they couldn't proceed with those first few allegations because they didn't even try to. Judge Bevis has a question. If my colleagues want to stay on this kind of procedural thicket, I'm okay with that, but I would like us to have some time to talk about Eisenstein. I would like to stay for just a second. What if one of the partners, what if partner B had died? Partner B passes away and the successor in interest is the estate of B. Would you say new partnership, different entity, it's all just as the Delaware Supreme Court said, they can't go forward? Well, I think there's an interesting twist in your question is that there's a successor for that third partner. Let me ask the first question. If one partner dies, if Ben Guido had died, could they proceed? No, I don't think they could. Because the question I got, I understand you've got that combined thing and you can't have, you know, if the sum is greater than the parts, I got it. That's why I'm asking the question the way I'm asking it. Partner B dies and there's a successor in interest by operation of law. I think that would be a different situation and that might be acceptable. Okay. Their assertion is you don't have to die to do that. It's still the same. We've got an operation of law kind of a thing. JKJ steps into the shoes of old, new steps into the shoes of old. Why isn't that operation of law just as much as a dead person's successor in interest? Because that's not what happened here at all, your honor. This new JKJ didn't just step into the shoes of the old JKJ. They created a whole different complaint. Yes, it arises out of the fraudulent scheme, but it's a do over. If you look at rule 17 and rule 25 that the court asked about, I've never seen a case where the new entity that's substituting in says, oh, but I have a whole new set of facts. It's a caption change. You don't get to do that under rule 17 and rule 25. So this is not, so I think the relator is positing a case that doesn't exist here. I think this brings me to my case, which is I was shocked by your answer to Judge Jordan saying that the death of one partner would take this outside, because that's not what the text of the statute says. The statute bars intervening or bringing a related action, and I do not understand how someone's dying counts as intervening or bringing a related action. Likewise, your logic seems to be that anytime there's something that happens, that somehow the partnership goes away, well, that's good for your client, but there's no consistent legal rule that comes out of that. No, no, no, no, no, no, no. I get to ask the question, sir. The question is, the statute uses the term intervene. It's a legal term of art. It's in rule 24. It's in Black's Law Dictionary, or bring a related action. Now, the statute doesn't use the term first-to-file bar, but this is commonly understood as the statute is trying to keep other people from sticking their noses in, from piggybacking, from taking the action away. That seems like a logical statutory purpose, evident. That's why it's known as first-to-file. So I can see how someone injecting himself, that's the meaning of the word intervene, that would interfere with it. It'd be me too actions, sticking your nose in. But when you have the plaintiffs themselves saying, I'm going to, I'm going to have a follow on somebody else that's not sticking your nose in, that's not bringing a separate action. Why does that fit within the statutory text and purpose? Yeah. So Your Honor, if you look at the statutory text, when Mr. Jacinthe was making his argument, he used the phrase stranger to the litigation several times. There was nothing in the language of what is commonly known as the first-to-file provision that references strangers or friends of the particular plaintiff that's pursuing. It's just not in the statute at all. And it's just made up. And in fact, parse the word intervene and parse the words, bring a related action for me. Right. I think those words are read in tandem and they suggest reading the statute broadly, but I think you need to go no further than Eisenstein to see what did Justice Thomas rely on when he was talking about the phrase intervention in Eisenstein. What he cited was a 1920 case called Roca v. Thompson that predated Rule 24 at all. And Roca v. Thompson, when it was describing intervention, described it in very broad common law terms of relying on Black's Law Dictionary that talked about a party, no talking about related or unrelated, entering a litigation. I don't see how this case is not like that. Okay. Let me suggest why it is like that. That the verbs, let's set aside, maybe you want to hang a lot on the use of the word requisite, but at the moment you're not. The word intervene in Black's Law Dictionary and the rest of the discussion in Eisenstein is about, it's used as an active verb, a party sticking itself in. It's not being used for someone who is being brought in, impleted, interpleted, some other mechanisms for becoming a party or becoming involved without having taken some action on one's part, right? So that's the rest of the discussion in Eisenstein. So I don't see how you can suggest that all of those things are in here. The Rule 24 intervention gets at this problem and now we have Rule 24 on the books. Why should we be reading it beyond that actively sticking your nose into the litigation? Answer number one is I don't think there's anything in the language about related or unrelated, sticking your nose in or invited in. So I think that would be adding language to the statute that's just not there. Okay. Let's go to the text of the statute. Tell me why you think that's the case. Because I thought that when we looked at 3730b-5, when a person, no person other than the government may intervene, that's an active verb, that's the use of it, or bring a related action based on the facts. So how in the world would being impleted or being interpleader, et cetera, possibly be covered? Your reading seems to suggest all that stuff should come in, but there's no person taking an action in those situations. He's being brought in. Sorry. Are you finished, Your Honor? Yes. Sorry about that. Well, Your Honor, I think again, when you go back to Rocha and Black's Law Dictionary and the general purpose, the court could have said uninvited person through Rule 24, but the court didn't do that. I think what it was doing was creating a broad definition that really covered, when you look at how Justice Thomas described it, a party becoming somebody, one becoming a party. It wasn't a case that had anything to do with Kitam stuff, right? It didn't have anything to were working. They were dealing with a whole nother set of questions. And even if the court might've spoken in somewhat broad language there, it certainly wasn't in the context of 31 U.S.C. 3730 B-5. That wasn't in the court's contemplation at all. So Judge Bevis' questions are trying to get you to focus on that, on that statute. And he's asked you now two or three times where there's an active verb that shows the person doing something to get into the case. And we've got now Rule 24 to cover instances of intervention. Why would we read Eisenstein to be what you seem to be asking us to do? And that is treated as something which covers all means by which a party, a person might become a party to a suit. Not actively engaging to get into the suit, but all means by which it might end up in the suit. Yeah. I take the point about, I take the point about it being an active verb, but it also mentions filing a related action. And now that also happens. It doesn't involve whether it was a friendly person or an unfriendly person. And I feel like it would be such a slippery slope to kind of construct a rule that says, okay, if the person is invited in, we're going to let them come in anytime because of the first to file bar. You'll have an endless series of amendments with endless series of people coming in. That is just not... How so? And why isn't that something that's adequately handled by other discretion and the trial judges hands then to police that. But if you look at LaCourte, Your Honor, and I would say, here's another answer to the question. LaCourte talks about the policy behind the first to file bar as it was interpreting the scope of what a related action is. And it wasn't, I'll grant you that it was a stranger that came in, but what the relater was saying was very similar to what Mr. Jusinke said. I can make, I have a better case. I can the structure of this statute. It is designed to encourage whistleblowers to come in quickly, and it's designed to encourage the government to learn about the fraudulent scheme. In this particular case, the government was notified of the purportedly fraudulent scheme in 2011. The policies behind the first to file bar had been satisfied under the false claims act had been satisfied when that happened. And what could be the policy of allowing somebody to say, oh, here, I have some great new color to add six years after the fact, the government has already done a six year investigation. Then, then maybe, are we back to the question of whether this ought to be the sort of thing that's handled under Rule 15 is a fact based question to be addressed by the district court in the first instance, just the way the Delaware Supreme Court seemed to imply when it said, hey, there are fact based questions here that we can't answer. No, I don't think so. You are because I think what the Delaware Supreme Court was talking about when it talked about fact based questions was who owns this claim. And I don't think you look at it that way. I understand. That's, you know, I got page 28 of the complaint in front of I mean, of the opinion in front of me too. But But the point I'm asking you, and I think this is was well put by Judge Beavis earlier is you seem to be arguing, hey, this is completely new, all new stuff. It's not right. It shouldn't be allowed to happen. That's really isn't that more in the nature of an argument that this is an unfair amendment, a Rule 15 argument. And it's not really about intervention and Rule 24 and adding parties at all. It's really hey, they just want to do over that's we typically handle that by saying, wait a second. You're just adding stuff that ought not relate back. It's not fair. Yeah, I let me I have the same concern to Judge Jordan. Maybe I'll put it a slightly different way. There's a set of rules under Rule 15 about what relates back. And you got very far away from the text of what is a related action. But I thought that this was going to come down to have these amendments. This is not just a in the caption. These amendments have gone so far substantively, that it shouldn't relate back, it should really be understood as a distinct action, such that it falls within the term related action. If that's what we're arguing about, why not let the district court take the first crack at it, Mr. Edenshaw. So my point, Your Honor, was to respond to the court's question about Rule 17. And relators question about Rule 25. I think answer number one on that is this is not a Rule 17 or Rule 25 issue, because it's not the same football. It's not a game of who owns the football. This is not just a caption change. They did do significant amendments to the complaint that make it fall outside of Rule 17 and Rule 25. So I think you are back at whether a Rule 15 amendment, like the plaintiff tried to do here, falls within the first to file bar or not. And I in both those cases, this answer the question about why the district court if that's true, why shouldn't the district court have the first crack at this? That's the question is being because that's not what the plaintiff tried to do here. The plaintiff didn't just try to add something to an existing complaint. What they did was they tried to swap out Relator One with Relator Two. And there were two different combinations of people, two different partnerships. So I think for sake of discussion, why don't you say why don't you just say we're past that? Okay, assume we were of a mind to say, well, maybe they can, they could pursue this, but maybe they shouldn't be permitted to not because necessarily the first to file bar against intervention, but because this is in effect, the bringing of a new action, it's a, it's a complaint that just doesn't really count as a second amended complaint. If we were, if we were thinking that I'm hoping to get you to the point of, I mean, if we were at that space, would you say we would still be in a position to our rule on this as a matter of law? Or are there factual issues? That is questions about even if they're not factual, but questions about what doesn't, doesn't relate back, which are better wrestled with in the district court in the first instance. Yeah. So I think, I think what you're always asking me is if, if you hold that under Eisenstein, this is not an intervention. And therefore, as a legal matter, it was okay for the second partnership from a theoretical standpoint to come in at this point. And the real question is, at that point, are there more fact finding for the judge to do to be able to say whether this complaint comes or goes? Yes. I would say yes. All right. That answers my question. Judge Bibas, anything else? Nothing further. Judge Nygaard, do you have anything? Thank you. I'm satisfied. Okay. All right. Mr. Jasinski, your rebuttal, please. Thank you, your honor. I'd like to, to address that last point, which I think is an important one about the sort of argument I hear regarding whether we're looking at the new facts in the second amendment complaint, or we're looking at the, the identity of Dr. Gravel. And I think it, those two should not be confused. My understanding and the record will confirm this, that the defendants consented to the filing of the second amendment complaint. I think the time to argue that the second amendment complaint improperly brought in facts that were too far afield has, has passed. Well, we're way, way, way past that in this litigation, Mr. Jasinski. Your, your side is switched side. You know, you flopped around on stuff so much that I don't think you are in any position to say, oh, time's passed for that. You, so you like, put that, put that one away where I'm, or at least, I don't know, maybe judge Beavis and judge Nygaard will hear that and say, yeah, I like it, but that's not cutting it with me at all. Assume for the sake of discussion, that the same thing that was posited to Mr. Agneshwar, and that the, the issue now was now that we've sorted out with the help of the Delaware Supreme Court, whether we've got a new or an old partnership, are we dealing with something which is better thought of and understood as a question about whether something properly relates back under rule 15 or amounts to the bringing of a new action and therefore might invoke the first to file issue, like deal with that. Okay. Sorry. Yes, your honor. And I was, I'm sorry that I wasn't getting there quickly enough. The, I think the larger point is that if the new partnership is standing in the shoes of the old, then this isn't about there being a, a new, there's, there's no new knowledge, right? Here's what I mean by that. The, the, we are, we are dependent upon and would be dependent upon the, the, the knowledge of the original partnership, right? That issue only comes about if there's a public disclosure and we need to invoke the original source exception. In the absence of that, these original two partners would be free to interview Dr. Gravel and to learn something from him and to move to include it in their complaint. And if that information was non-public as the district court has concluded that it was, then they're entitled to do that. The, the argument would be at that one answer then Mr. Agnes Schwartz assertion that, which is, seems to be directly contrary to what you're saying, which is they are only allowed to claim that they're the original source because they had a, they were, and they chose to do this, not as individuals, but as an entity taking advantage of limited liability. So you can't ignore the fact that there is some hybrid aspect to this partnership. It's not purely an aggregate. There is, it is got elements of entity protection associated with it. They, they picked this and, and that the consequence of that is it's a, it is an aggregate set of knowledge. Once you pull some of that knowledge out and stick somebody else in, you, you don't know what you have. You can't, you can't simply accept that. What, what's wrong with that reasoning? So my argument would be that if the, if the public disclosure bar applied and thus the relator needed to rely upon being an original source of the information, I think the defendants would have a very good argument as it was just raised, that they could not proceed on the basis of, of knowledge that Dr. Grabel brought to the table. And that because you're arguing, I hear, I understand them to be arguing this, this second amendment complaint. It's not just a, you know, a tightening up of a screw here and a nut there. This is, this is a completely new set of allegations. And Dr. Grabel, he's the hero in this one. He's the one who's bringing everything to the table. Totally different. That's the, I understand. And I, and I think it's an important point and I'm trying, I'm trying to answer your honest question. There is, if in the absence of there being a public disclosure, the knowledge, the basis for the knowledge of the allegations in the complaint is irrelevant. So, so the fact that new allegations have been, have been brought in the second amendment complaint, which we will accept as true for purposes of argument, came from Dr. Grabel. In the absence of public disclosure, it doesn't matter. If Dr. Grabel doesn't need to be a party, he could have been a third person who picked up the phone and called the two original relators. You only get to the knowledge of the relators if they need to be an original source, which they don't hear because the district court concluded there was no public disclosure. So we don't, we don't need the gloss of, of the, of the knowledge and considering. I understand your position. Okay. Okay. Thank you. I understand my time is up. If there are any questions, I'd be happy to answer them, but otherwise I'll conclude. Judge Beavis. Judge Nygaard, anything from you, sir? Nothing. Thank you, Judge Jordan. Okay. Well, Mr. Jasinski and Mr. Agnes Schwartz, thank you so much for your argument today. It's been helpful. We got the matter under advisement. We'll get back to you and Judge Beavis and Judge Nygaard, I will call you separately. Let's recess court. Thank you, Judge.